...

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| MUSLIMAH CLARK #922283 | * | |
| Plaintiff | * | |
| v | * | Civil Action No. ELH-12-3821 |
| DEPARTMENT OF CORRECTIONS | * | |
| SHERRELL CARVER | | |
| TONEICE LIGHTNER | * | |
| Defendants | | |
| | *** | |

**MEMORANDUM**

On December 28, 2012, plaintiff Muslimah Clark, a Maryland Division of Correction ("DOC") prisoner confined at the Maryland Correctional Institution for Women in Jessup ("MCI-W), filed a civil rights action, supported by several exhibits, and later amended. ECF 1; ECF 4. Plaintiff alleges that defendants failed to protect her from harm by allowing her to be brutally beaten on November 29, 2010, and March 31, 2011, by inmates Christine Brown and Sirilar Stokes, who were her "known enemies." ECF 1 at 5; ECF 4. She seeks money damages and imposition of an "appropriate penalty" against the DOC and two correctional officers, Sherrell Carver and Toneice Lightner. ECF 1 at 4; ECF 4.

Defendants' first motion for summary judgment, ECF 12, was supported by several exhibits. That motion was granted in part and denied in part. *See* ECF 19, ECF 20. In addition, defendants were permitted to renew the motion and to provide supplemental briefing. *Id.* The supplemental brief, filed as a motion to dismiss the complaint for failure to state a claim or, in the alternative, for summary judgment (the "Motion," ECF 26), is supported by a lengthy exhibit. Plaintiff was provided an opportunity to oppose the motion (ECF 27), but has failed to do so. I shall construe the Motion as one for summary judgment. In construing the Motion, I

shall also consider the exhibits filed in support of the original motion (ECF 12). *See* note 2, *infra*.

No hearing is needed to resolve the case. *See* Local Rule 105.6 (D. Md. 2014). For the reasons set forth below, I shall grant the Motion.

**Standard of Review**

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U. S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[1]

---

[1] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. Generally, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.

---

instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."). Plaintiff has been provided the requisite notice. *See* ECF 27.

Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

Plaintiff has not filed an affidavit under Rule 56(d). Moreover, I am satisfied that it is appropriate to address the defendants' motion as one for summary judgment. In doing so, I will consider the declarations and exhibits submitted with defendants' initial dispositive motion, *see* ECF 12 and exhibits, as well as the additional declaration and attachments. *See* ECF 26-2.[2]

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U. S. 242, 247-48 (1986) (emphasis in original).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [her] pleadings," but rather must "set forth specific facts showing that there is a genuine issue for trial. *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or

---

[2] The exhibits to ECF 12 include one that contains about 65 pages of records, appended to the Declaration of Lorelei Sattler, Litigation Coordinator at MCI-W. *See* Exhibit 1, ECF 12-2. Another exhibit contains over 100 pages of plaintiff's medical records. *See* Exhibit 2, ECF 12-3. And, the exhibits include the declarations of Carver and Lightner. *See* Exhibits 3 and 4, ECF 12-4 and ECF 12-5, respectively.

assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 644-45 (4th Cir. 2002).

Because plaintiff is self-represented, her submissions are liberally construed. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007). Nevertheless, the court must also abide by the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial. *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Factual Summary**

Plaintiff alleges that she had an altercation with fellow prisoner Christine Brown on June 17, 2009. Initially, she reported the incident as involving officers, not Brown. ECF 1-1 at 1. Plaintiff, who received an adjustment ticket as a result of her refusal to stop fighting, was scratched in the back of the head. ECF 2-2 at 6-7. The incident was deemed minor and no investigation was convened by correctional staff. ECF 26-2, ¶ 7 (Declaration of Tonia Carrington)[3]; ECF 26-2 at 6-7. Plaintiff did not request that Brown be added to her enemies list. ECF 26-2, ¶ 6. Moreover, Carrington avers that minor incidents do not automatically result in the designation of either prisoner as an enemy of the other. ECF 26-2, ¶ 5. *See also* Exhibit 1 to ECF 26-2.

Plaintiff was offered protective custody status on October 26, 2010, which she declined, stating she did "not believe I'm in any harm or trouble." ECF 26-2 at 10.[4] She claims Brown

---

[3] Carrington has been employed by the Maryland Department of Public Safety and Correctional Services since 1988. She is a Shift Commander (Major) at MCI-W. ECF 26-2, ¶ 2.

[4] The record does not reflect why prison staff offered plaintiff protective custody status on this occasion.

5

verbally threatened her on or about November 10, 2010, when both women were visiting the psychology department, and that Officer Durham[5] was present during the incident. ECF 1 at 5. Prison personnel investigating the circumstances of the verbal dispute believed plaintiff could constitute a threat to others, and placed her on administrative segregation status for five days, beginning on November 25, 2010. ECF 1-2.[6]

Plaintiff filed an application for statement of charges against Major Lanham Linton, alleging Linton should not have placed her on segregation status as a result of the argument on November 10, 2010, a situation plaintiff believes left her vulnerable to attack. ECF 1-9. Maryland's electronic case search does not demonstrate that Linton was formally charged in connection with the incident.

On November 29, 2010, while plaintiff was on administrative segregation status,[7] plaintiff was attacked by inmates Brown and Stokes, while plaintiff was being escorted by Correctional Officer Tiffany Jones. ECF 12, Ex. 1 at 11, 14, 19, 31, 38-39. To reach plaintiff, Brown and Stokes, who were locked in the recreation room, broke through the door. ECF 26-2, ¶ 11. Although it initially appeared that plaintiff's injuries were minor, ECF 12-3 at 37-39, plaintiff later was transported to Bon Secours Hospital for treatment of a scalp laceration. ECF 1-1 at 1; ECF 12-3 at 40-47. She received a CT Scan, and the wound was closed with staples. ECF 12-3 at 39-45. The wound was not regarded as serious, however. *Id.*

---

[5] Durham is not named as a defendant.

[6] Defendants state that plaintiff's base file does not reflect this incident. Plaintiff, however, provides an exhibit showing the incident did occur.

[7] Defendants claim plaintiff was temporarily transferred to administrative segregation because she verbally threatened another inmate. *See* ECF 12-1 at 2; ECF 12-2 at 2-6.

at 41.  Moreover, "No follow-up [was] necessary."  *Id.*at 40.  Plaintiff was returned to the general population on December 3, 2010.  ECF 12-2 at 8-9.

Both Brown and Stokes were convicted of inmate rule infractions as a result of the attack on plaintiff.  ECF 12-2 at 10-11; 2; 30-31; and 45.  Stokes and Brown were criminally charged in the attack.  ECF 1-4 at 1-2.  In particular, Stokes was charged with second-degree assault on DOC employee Tracy Harper.  *See* http://casesearch.courts.state.md.us/inquiry/inquiryDetail.jis?caseId=1A00237546loc=28&detailLoc=DSCR.  Following her guilty plea on December 16, 2011, she was sentenced to two years of incarceration, consecutive to the sentence she was then serving.  *See*  http://casesearch.courts.state.md.us/inquiry/inquiryDetail.jis?caseID=02K11001895&loc=60&detailLoc=K.  Brown was also charged with second-degree assault on Harper.  But, the charge was later nolle prossed.  http://casesearch.courts.state.md.us/inquiry/inquiryDetail.jis?caseId=5A00237550&loc=28&detailLoc=DSCR.

On January 26, 2011, plaintiff was again offered protective custody status, which she rejected.  ECF 26-2, ¶ 9; ECF 26-2 at 11.  Nearly four months later, on March 31, 2011, while plaintiff was under escort to her cell by Correctional Officers Harris and Lightner, Stokes ran out of her cell and struck plaintiff in her face and torso with a closed fist.  ECF 12-2 at 58.  Plaintiff slipped one handcuff and began to punch back.  Plaintiff refused medical treatment.  ECF 12-2 at 60.

At her adjustment hearing, Stokes indicated she and plaintiff had each threatened and assaulted and spit at each other in the past.  ECF 12-2 at 51-58.  Stokes was convicted of rules violations and placed on disciplinary segregation status for 210 days.  Stokes was added to plaintiff's enemies list on June 9, 2011.  ECF 1, Exhibit 1 at 1.

Defendant Carver contends that the incidents between plaintiff and Brown prior to November 29, 2010, were isolated events and she had no knowledge of a specific threat to plaintiff's safety by Brown and Stokes. ECF 12 at 7. That day, Carver was working the "bubble," a centrally located room that allows the officer-in-charge to control the opening and closing of cell and wing doors from a remote location. Carver, who received a "code 10-10" emergency transmission from an escort officer on C-Wing, then observed the attack. Carver responded by calling for assistance, and additional officers responded to the scene. ECF 12-4 at 2-3.

Defendant Lightner was involved in the incident of March 31, 2011. She was escorting plaintiff from the recreation room to her cell when Stokes ran out of her cell and struck plaintiff with her fist. Lightner called a "ten-ten" code (inmates fighting) and, with the assistance of another escort officer, separated the women. Stokes was handcuffed and placed back in her cell without further incident. ECF 12-5 at 2. Lightner avers that she had no knowledge of the prior incidents between plaintiff and Stokes, Brown, or any other prisoner, and did not know of the prior incidents involving plaintiff. *Id.*

## Discussion

An inmate has an Eighth Amendment right to be protected from violence perpetrated by other prisoners. *Danser v. Stansberry*, ____ F.3d ____, No. 13-1828, slip op. at 13 (4th Cir. Sept. 12, 2014); *see Farmer v. Brennan,* 511 U.S. 825, 833-35 (1994). In *Danser*, the Fourth Circuit recently explained, slip op. at 13-14:

> This constitutional right derives from the Supreme Court's holdings that the treatment an inmate receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. [Farmer, 511 U.S.] at 832-33. Because being assaulted in prison is not "'part of the penalty that criminal offenders pay for their offenses against society,'" id. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)), prison officials are responsible

for "protect[ing] prisoners from violence at the hands of other prisoners." Id. at 833 (citations and internal quotation marks omitted).

Further, the *Danser* Court said, slip op. at 14:

An Eighth Amendment claim of this nature requires proof of two elements to establish deprivation of a constitutional right. [Farmer, 511 U.S.] at 834; Brown v. N.C. Dep't of Corr., 612 F.3d 720, 723 (4th Cir. 2010). First, a prisoner must establish a serious deprivation of his rights in the form of a "serious or significant physical or emotional injury."[ ] Brown, 612 F.3d at 723; see also De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013). . . .

The second element … requires that a plaintiff show that the prison official allegedly violating the plaintiff's constitutional rights had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834 (citation and internal quotation marks omitted). In this context, the required state of mind that must be established is a "deliberate indifference to inmate health or safety." Id. (citations omitted).

In order to prevail on an Eighth Amendment claim of failure to protect from violence, plaintiff must establish that defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987); *see also Farmer v. Brennan*, 511 U.S. at 833-34 (citations omitted). However, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837; *see also Rich v. Bruce*, 129 F. 3d 336, 339-40 (4th Cir. 1997); *Parrish ex rel. Lee v. Cleveland,* 372 F.3d 294, 303 (4th Cir. 2004); *Young v. City of Mount Ranier,* 238 F.3d 507, 575-76 (4th Cir. 2001).

"Deliberate indifference" may be established by showing that the prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S.

9

at 837. Deliberate indifference is "a very high standard." *Grayson v. Peed*, 195 F.3d 692, 694 (4th Cir. 1999). It requires a plaintiff to introduce evidence suggesting that the prison official had actual knowledge of an excessive risk to the plaintiff's safety. *Farmer*, 511 U.S. at 837; *Danser v. Stansberry, supra,* slip op. at 15.

Notably, a "showing of mere negligence" will not suffice. *Grayson*, 195 F.3d at 695. Rather, actual knowledge of the risk of harm to the inmate is required. *Young v. City of Mt. Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001). For purposes of a deliberate indifference claim, "'[i]t is not enough that the [defendant] *should* have recognized'" a substantial risk of harm. *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Parrish ex rel. Lee*, 372 F.3d at 303 (emphasis added in *Iko*).

At the time of the incident on November 29, 2010, plaintiff was on administrative segregation status and under escort by a correctional officer when Brown and Stokes broke through a door to attack plaintiff. The escorting officer called for assistance and Carver, who was working the control "bubble," immediately summoned backup responders. The attack was quelled and Brown and Stokes received institutional sanctions for their misconduct.

To be sure, it is unfortunate that plaintiff received a scalp injury as a result of the attack. But, she was provided appropriate medical treatment for her injury. And, when offered protective custody status, plaintiff refused. Nothing suggests that Carver acted inappropriately in responding to the situation, or that Carver knew that plaintiff faced an excessive risk of harm during her escort.

Similarly, nothing in the record suggests that Lightner knew, or should have known, that plaintiff and Brown had fought in the past, or that there was still an issue between the two, or that Brown would run out of her cell to punch plaintiff while plaintiff was under escort.

For these reasons, defendants' Motion (ECF 26) is GRANTED. A separate Order follows.


<u>October 31. 2014</u>                                              <u>            /s/                      </u>
Date                                                                   Ellen Lipton Hollander
                                                                       United States District Judge